Brady, J.
The plaintiff, whilst engaged in the service of the defendants in slinging and hoisting boxes of tea to an upper floor of the defendants’ building through an open hatchway, was struck on the head by the falling of a heavy iron check weight, resulting from the breaking of the rope to which it was attached. The plaintiff proved by witnesses who were employees of the defendant, and who examined the rope immediately after the accident, that it was rotten, and it appeared that the rope had been in use for a year. The latter fact was conceded by the defendants’ witness whose duty it was to make an examination of the machine to which the rope was attached every Monday according to his own statement. The plaintiff also proved by one Robinson, and engineer and master mechanic, and who had had considerable experience with elevators, pulleys, ropes, etc., extending over a period of twelve years, that the pulley and stop-block attached thereto were improperly constructed and not safe to use, and that their relations to each other were such as to cause friction upon the rope and wear it away. He also said in answer to a question put for the purpose of developing his opinion, “In my judgment, as a man familiar with these machines, and with their construction and use, I consider that the stop-block, or the main thing which prevents the lever from getting back too far, is in a wrong position; I should remove it farther on the line so that the pulley would not bear against it.
Q. Do you consider it safe machinery ? A. I don’t. Q. *228 As it was % A. I don’t know as it was; I am taking it the way I saw it. Q. It wore into the wood ? A. Yes, sir. Q. And the result would be to wear away the rope % A. Yes, sir.
It is true that on behalf of the defendants it was shown that the machinery used by them had been employed in their and in other houses for many years, and that a person designated by them was required to make an examination of it each Monday, and by the person so designated that he had made the examination. Indeed the witness testified that he had made the examination on the Monday preceding the accident, and that the rope was good and sound substantially. The examination, however, must have been very superficial for the reason that the rope was not good and not sound; it was rotten, and the ends where it had broken crumbled into powder when touched.
There are a great many cases bearing upon the question of the employer’s liability, and to several of them we have been referred by the respective counsel engaged in this controversy. In some of the cases cited by the respondent’s counsel it did not appear what was the cause of the particular accident by which the injury was done, and, therefore, there was an absence of the proof which was given in this case that it arose from rotten rope which was totally inadequate for the purpose for which it was designed.
It is not deemed necessary to consider these cases in detail or to distinguish them inasmuch as the recent case of Benzing v. Steinway (101 N. Y., 547,) states the rule as follows: “It has been repeatedly held that the risks of the service which a servant assumes in entering the employment of a master are those only which occur after the due-performance by the employer of those duties which the law enjoins upon him and that the negligence of the master, co-operating with that of a servant in producing injury to a co-servant, renders the master liable.” And again: ‘ ‘ The rule is unqualified that a master is bound to use all reasonable care, diligence and caution in providing for the safety of those in his employ, and furnishing for their use in his work safe, sound and suitable tools, implements, appliances and machinery in the prosecution thereof and keeping the same in repair. This is the master’s duty and he cannot exempt himself from liability for its omission by delegating its performance to another or having required work to be done by omitting precautions and inquiries as to the time and manner of its performance.” And again: “Ignorance by the master of defects in the instrumentalities used by his servants in performing his work is no defense to an action by the employee who has been injured ' *229 by them when, by the exercise of proper care and inspection the master could have discovered and remedied the defects or avoided the danger incident therefrom.”
Whether the defendants had obeyed these mandates of the law in regard to their duties to the plaintiff as one of their employees, was a question of fact which should have been submitted to the jury. It would seem to' be impossible that the person selected for the purpose of making an examination of the machinery and the rope attached to it, the use of which resulted in the plaintiff’s injury, could have properly discharged his duty, or indeed that he could have inspected it at all as it should have been examined, considering the serious consequences which might and did ensue from the breaking of the rope. A general observation of it, perhaps a glance, might not disclose its infirmities, but such an examination as ought to have been made would undoubtedly have done so, and as there was a doubt created as to the discharge by the defendants of their obligation to their employees the question of their negligence should, as already suggested, have been submitted to the jury.
This case is distinguishable from those to which reference has been made by the fact that the accident is accounted for and is shown to have resulted from the use of a rope which was in its then condition totally unfit for the purpose.
The judgment should be reversed and new trial ordered, with costs to appellant to abide event.
Daniels and Bartlett, JJ., concur.